UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RODOLFO JEREZ SOSA,<br><br>Petitioner,<br><br>v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT FIELD OFFICE DIRECTOR,<br><br>Respondent. | CASE NO. 2:25-cv-02722-JNW<br><br>ORDER GRANTING HABEAS PETITION |

## 1.  INTRODUCTION

This matter comes before the Court on Petitioner Rodolfo Jerez Sosa's petition for writ of habeas corpus. Dkt. No. 4. Having considered the petition, the return, Dkt. No. 7, the traverse, Dkt. No. 10, and all supporting materials, the Court GRANTS the petition.

## 2.  BACKGROUND

Jerez Sosa is a 47-year-old Cuban national who arrived in the United States in 1995 as a minor. Dkt. No. 10 at 2; Dkt. No. 8 ¶ 4. He was paroled into the United

ORDER GRANTING HABEAS PETITION - 1

States on or about 1997.[1] In 2002, Petitioner was convicted for delivery of cocaine in Washington and sentenced to 15 months of imprisonment. Dkt. No. 9-15 at 4. Following his release from state custody, Jerez Sosa was placed in removal proceedings. *See* Dkt. No. 9-1. On March 24, 2003, an Immigration Judge ("IJ") ordered him removed to Cuba. *See* Dkt. No. 9-2 at 2. He subsequently petitioned for habeas corpus, *see* Dkt. No. 8 ¶ 10, and was eventually released under an Order of Supervision ("OSUP"), *see* Dkt. No. 9-3 at 2.

On December 3, 2009, Jerez Sosa left the United States only to re-enter four days later near Laredo, Texas. Dkt. No. 9-6. Upon his re-entry, he was detained and sentenced to serve 180 days in detention before being released on a new OSUP. Dkt. Nos. 9-7, 9-8. In 2011, he was arrested in Seattle, Washington and transferred to the custody of U.S. Immigration and Customs Enforcement (ICE). Dkt. No. 9-9. Unable to procure travel documents from Cuba, ICE released Jerez Sosa on his third OSUP. Dkt. No. 9-9. In 2022, he was placed under a fourth OSUP. Dkt. No. 9-11.

On December 19, 2025, Jerez Sosa reported to ICE in accordance with his OSUP, where he was detained and sent to the Northwest ICE Detention Center in Tacoma, Washington. Dkt. No. 9-15 at 3. On December 31, 2025, Julio Hernandez, the acting ICE Field Office Director, revoked Jerez Sosa's release on the grounds

---

[1] There is conflicting evidence on Jerez Sosa's parole date. The Government asserts that Jerez Sosa was paroled "on or about January 26, 1995," *see* Dkt. No. 8 ¶ 3, while his A file reads that he was paroled two years later, *see* Dkt. No. 9-15 at 3. But whether he was paroled in 1995 or 1997 makes no difference to the Parties' arguments or the Court's analysis.

ORDER GRANTING HABEAS PETITION - 2

that "[a] determination was made that there is now significant likelihood of your removal from the U.S. in the foreseeable future." Dkt. No. 9-13 at 2.

The following week, Jerez Sosa filed his instant petition for habeas corpus as a pro se petitioner. Dkt. No. 4.

## 3.  DISCUSSION

### 3.1    Legal standard.

Because Jerez Sosa is proceeding pro se, the Court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A federal court may grant a writ of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§

ORDER GRANTING HABEAS PETITION - 3

2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 3.2    The Court has subject matter jurisdiction.

The Government contends that 8 U.S.C. § 1252(g) bars this Court from reviewing ICE's decisions to revoke Jerez Sosa's OSUP, detain him, and execute his removal order. Dkt. No. 7 at 7–8. Binding precedent compels a much narrower reading of the statute.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action* by the Attorney General *to commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). The Supreme Court has interpreted this provision narrowly, limiting it to only "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.,* and cautioned against interpreting it to "sweep in any claim that can technically be said to 'arise from'" these three actions, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see AADC,* 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation

was a shorthand way of referring to all claims arising from deportation proceedings.").

Many courts—including this one—have held that challenges to the length of detention or the revocation of supervised release fall outside Section 1252(g) because they do not implicate one of the statute's three enumerated actions. *See, e.g.*, *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *2–3 (W.D. Wash. Dec. 19, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *7 (D. Or. Aug. 21, 2025) ("Courts have 'distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.'" (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. May 2, 2025)).

Moreover, the Supreme Court's decision in *Zadvydas* confirms that individuals with removal orders can challenge their confinement through habeas petitions, as long as the habeas petition does not require the court to review one of the three distinct actions listed in Section 1252(g). 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Like the petitioners in these cases, Jerez Sosa challenges the legality of his continued detention—not his removal order. His petition thus falls outside of Section 1252(g). The Government's reliance on Section 1252(a)(5) and (b)(9), *see* Dkt. No. 7 at 8, fares no better. Those sections apply "only to those claims seeking judicial review of orders of removal." *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007).

ORDER GRANTING HABEAS PETITION - 5

Accordingly, the Court has subject matter jurisdiction over Jerez Sosa's case.

### 3.3    Indefinite immigration detention, as defined by the Supreme Court in *Zadvydas*, violates due process.

Jerez Sosa argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Due process protections cover non-citizens subject to final orders of removal, limiting how long they may be detained. *Id.* at 693–701. After a final order of removal, the Government ordinarily secures the non-citizen's removal "during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. Jerez Sosa is detained under 8 U.S.C. § 1231(a)(6), a "special statute [that] authorizes further detention if the Government fails to remove the alien during those 90 days." *Id.* Under that statute, ICE may continue to detain certain removable non-citizens past the 90-day window, or it may choose to release them on conditions of supervised release. *Id.* (citing 8 U.S.C. § 1231(a)(6)).

But this authority is not unlimited. In *Zadvydas*, the Supreme Court held that the statute "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer

ORDER GRANTING HABEAS PETITION - 6

reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Six months is the presumptive *ceiling* for reasonable detention. *Id*. at 701. After six months, the burden is on the noncitizen to show "that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025) (citation modified) (quoting *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003)). The burden then shifts to the Government to rebut that showing. *Zadvydas*, 533 U.S. at 701. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time. Furthermore,"[t]he presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered." *Yuksek v. Bondi*, No. 2:25-CV-02555-DGE-GJL, 2026 WL 60364, at *2 (W.D. Wash. Jan. 8, 2026) (citing *Nguyen*, 796 F. Supp. 3d at 721–722 (W.D. Wash. 2025)) (collecting cases).

Over the course of his presence in the United States, Jerez Sosa has spent more than a year in immigration detention before being released on an OSUP. He was first detained for four months between March 19, 2003, and July 24, 2003. He was next detained for eight months between December 7, 2009, and August 10, 2010. He was next detained for two months between October 5, 2011, and December 23, 2011. He was next detained and released the same day on December 2, 2022.

ORDER GRANTING HABEAS PETITION - 7

And he has been detained since December 19, 2025. His total time in immigration detention exceeds sixteen months. This is not presumptively reasonable.

The Government claims, without support, that his current detention is warranted because there has been a "change in circumstances which indicate[s] that there is now a significant likelihood that Petitioner can be removed from the United States in the foreseeable future." Dkt. No. 7 at 6; *see also* Dkt. No. 8 ¶ 17, Dkt. No. 9-13 at 2. But the Government provides no evidence to show that his removal to Cuba—or any other country for that matter—is any more likely now than it had been for the past quarter-century. "Given the Government has been unable to remove him to Cuba for decades," the Court has good reason to believe his removal is not likely to happen in the foreseeable future, and thus Jerez Sosa has met his burden. *Arenado-Borges*, 2025 WL 3687518, at *4.

The Government has not rebutted that showing. Outside of Respondents' naked assertion regarding a "change in circumstances," the Government proffers no evidence to show that Jerez Sosa's removal is indeed imminent or that he may be removed *anywhere*, let alone to Cuba, in the reasonably foreseeable future.

The Government does not argue that Jerez Sosa's criminal history or pending charge independently justifies his continued detention, and the Court declines to make that argument for it. In any event, the petitioners in *Zadvydas* had serious criminal records, and the Supreme Court still held that their indefinite detention violated due process. *See* 533 U.S. at 684–86 (describing petitioners' criminal histories, including drug-related offenses and other felonies).

ORDER GRANTING HABEAS PETITION - 8

On this record, the Court finds no good reason to believe that ICE is likely to remove Jerez Sosa in the reasonably foreseeable future. Release is therefore warranted under *Zadvydas*.

**3.4    The Government must follow the law if they re-detain Jerez Sosa.**

In addition to habeas relief, the Court enters equitable relief to prevent future constitutional violations. Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf,* 977 F.3d 935, 941 (9th Cir. 2020). Plaintiffs seeking permanent injunctive relief must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

All four factors are satisfied here. Jerez Sosa has suffered irreparable injury in the form of unconstitutional detention—a deprivation of physical liberty that cannot be compensated by monetary damages. The balance of hardships tips decisively in his favor: he has been detained for over sixteen months cumulatively despite the Government's inability to remove him for more than two decades, while the Government has identified no concrete impediment to his release on the conditions of his prior OSUP. And the public interest favors enjoining unconstitutional detention. *See Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK,

ORDER GRANTING HABEAS PETITION - 9

2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (applying permanent injunction standard in immigration habeas proceedings). The Court thus orders that Jerez Sosa may not be re-detained without notice and a meaningful opportunity to respond in reopened removal proceedings except as authorized by 8 C.F.R. § 241.13(i)(1).

## 4.  CONCLUSION

In sum, the Court GRANTS Petitioner's habeas petition, Dkt. No. 4. The Court ORDERS:

1.  Respondents must release Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to the conditions of his prior OSUP.

2.  Respondents may not re-detain Petitioner without notice and an opportunity to be heard except as authorized by 8 C.F.R. § 241.13(i)(1).

3.  Within FORTY-EIGHT (48) hours of his release, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 25th day of February, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING HABEAS PETITION - 10